UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**BLANCA RAQUEL BRAVO VELEZ, Individually, on behalf of other similarly situated individuals and as class representative,**

**Plaintiff,**

-- against –

**MITAD DEL MUNDO BAR RESTAURANT CORP., SEGUNDO MINCHALA, JULIA MINCHALA and SOLEDAD MINCHALA,**

**Defendants.**

**COMPLAINT**

**Civil No.  16-cv-2041**

**JURY TRIAL DEMANDED**

Plaintiff BLANCA RAQUEL BRAVO VELEZ ("Ms. Velez" or "Plaintiff"), on behalf of herself and all others similarly situated, by her attorneys, THE KAPLAN LAW OFFICE, for her Complaint against Defendants MITAD DEL MUNDO BAR RESTAURANT CORP. ("MDM"), SEGUNDO MINCHALA ("Mr. Minchala"), JULIA MINCHALA ("Julia") and SOLEDAD MINCHALA ("Soledad") (collectively, the "Minchalas"; MDM collectively with the Minchalas, "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").  This Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367 and because they are so related to the claim in this action within the Court's jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

1

2.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District and because a substantial part of the acts/omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

3.      Plaintiff Blanca Raquel Bravo Velez is a resident of Queens, New York.

4.      Defendant MDM is incorporated in and authorized to do business in the State of New York and is located in Queens, New York.

5.      Defendant Mr. Minchala is an owner and officer of MDM and is, upon information and belief, a resident of the State of New York.

6.      Defendant Mrs. Julia Minchala is an owner and officer of MDM and is, upon information and belief, a resident of the State of New York.

7.      Upon information and belief, Defendant Ms. Soledad Minchala is an owner and/or officer of MDM and is a resident of the State of New York.

## FLSA COLLECTIVE ACTION ALLEGATIONS

8.      Plaintiff brings her first and second claims herein for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants at any location on or after the date that is three years before the filing of this Complaint, as defined herein ("Collective Plaintiffs").

9.      At all relevant times, Plaintiff and the other Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, plans, policies, programs, practices, procedures protocols, routines, and rules in willfully failing and refusing to pay them at the legally required minimum wage for all hours worked and one and one half times this rate for work

in excess of forty (40) hours per workweek. Plaintiff's claims herein are in essence the same as those of the other Collective Plaintiffs.

10. The first and second claims for relief herein are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes, Collective Plaintiffs' names and addresses are readily available from Defendants. Notice can be provided to the Collective Plaintiffs through first class mail to the last known address of each individual Collective Plaintiff.

11. Plaintiff's Consent to Sue form is attached hereto as Exhibit A.

## FRCP RULE 23 CLASS ACTION ALLEGATIONS

12. Plaintiff bring her state law claims for relief (the third, fourth, fifth and sixth counts) pursuant to the Federal Rules of Civil Procedure, Rule 23 ("FRCP 23"), on behalf of all non-exempt employees employed by Defendants at any New York location in any hourly position on or after the date that is six years before the filing of this Complaint, as defined herein (the "Class").

13. The Class members are readily ascertainable. The number and identity of the Class members are determinable from Defendants' records. Class members' hours, positions held and rates of pay are also readily ascertainable from defendants' records. For purposes of notice and other purposes, Class members' names and addresses are readily available from Defendants. Notice can be provided by means permissible pursuant to FRCP 23.

14. The proposed Class is sufficiently numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the exact number of Class members is not yet known, and the information concerning that

3

number is within the sole control of Defendants, upon information and belief, there are at least fifty (50) Class members.

15.     Plaintiff's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief which would be sought be each Class member in separate actions.  All class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and overtime compensation in accord with the law.  Defendants' policies and practices affected all Class members similarly, and Defendants have benefited from the same type of unfair and/or wrongful acts/omissions as to each Class member.  Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

16.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests contrary to the Class' interests.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented clients in wage and hour cases.

17.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expense that numerous individual actions would engender.  Because the losses, injuries and damages suffered by each individual Class member are small in the sense pertinent to a class action analysis, the

expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs they suffered. Moreover, important public interests will be served by addressing this matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

18.   Upon information and belief, Defendants and other employers throughout New York sometimes violate the provisions of the New York Labor Law at issue in this case. Current employees are often afraid (often justifiably) to assert their rights out of fear of direct and/or indirect retaliation. Former employees are also fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication or their rights while eliminating or reducing these risks.

19.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members, including:

(a)   Whether Defendants employed Plaintiff and the Class members within the meaning of the law;

(b)   Whether Defendants paid Plaintiff and the Class members the federal and state minimum wage for all hours worked;

(c)   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work;

(d)   Whether Defendants properly compensated Plaintiff and the Class members for overtime hours worked; and

(e)   Whether Defendants paid employees New York's "spread of hours" premium when the workdays exceeded ten (10) hours.

## FACTUAL ALLEGATIONS

20.   Upon information and belief, MDM is a restaurant owned and/or managed by the Minchalas in Queens.

21.   At all relevant times, upon information and belief, MDM had annual gross revenues in excess of $500,000.

22.   At all relevant times, Defendants were Plaintiff's employer within the meaning of the FLSA and NYLL.

23.   Upon information and belief, at all relevant times, Mr. Minchala and/or Julia and/or Soledad had control over compensation and benefits practices at MDM.

24.   Upon information and belief, at all relevant times, Mr. Minchala and/or Julia and/or Soledad had the power to determine employment practices at MDM, including setting wage rates.

25.  Upon information and belief, at all relevant times, Mr. Minchala and/or Julia and/or Soledad had the power to hire and fire employees at MDM and to otherwise control the terms and conditions of employment.

26.  Upon information and belief, at all relevant times, Mr. Minchala and/or Julia and/or Soledad is actively involved in managing the day-to-day operations of MDM.

27.  Plaintiff was employed by Defendants as part of the service staff at MDM, located at 104-10 Roosevelt Avenue, Queens, New York from on or about September 9, 2015 through on or about December 6, 2015.

28.  On or about December 6, 2015, Plaintiff was held against her will by Julia and Soledad and was physically assaulted by Soledad.

29.  At the end of her shift, at around 6:20, Plaintiff encountered Julia in the MDM dining room.

30.  Julia instructed Plaintiff to meet her in the building's basement where Defendants have an office area and separate space for a pantry or warehouse.

31.  Plaintiff met Julia in the basement's office space, where she also encountered Mr. Segundo Minchala, and two of Julia and Segundo's daughters. Soledad was standing nearby, but was not in the office area.

32.  Julia told Plaintiff that they would speak in the warehouse.  Plaintiff proceeded to walk to the warehouse and was followed by Julia and Soledad.

33.  Once all three were in the warehouse, Julia closed and locked the door.

34.  Julia told Plaintiff that her employment was being terminated and that this day is the last day Plaintiff would be working at MDM.

35.  Julia also told Plaintiff that it was wrong of her to speak with Mr. Minchala and his son, Soledad's husband, who was also involved with MDM.

7

36.    Soledad told Plaintiff that she was shameless and taking advantage of the family who gave
       her a job and fed her, and that Soledad's marriage was breaking up because of Plaintiff.

37.    At that point, someone knocked on the door and also tried to open the door, but Julia and
       Soledad told the person to go away and that nothing was happening.

38.    Julia eventually opened the door and her son, Soledad's husband was there.

39.    Soledad went up to him and started hitting and pushing him. He left. Julia locked the door
       again.

40.    Julia told Plaintiff to not show up at work anymore and that she is an "illegal," therefore
       cannot do anything about this.

41.    Julia also threatened Plaintiff's family's safety and told Plaintiff that if Plaintiff returned to
       work she would go after Plaintiff's father and her family would be unsafe.

42.    Julia and Soledad continued to accuse Plaintiff of inappropriate communications with both
       women's husbands, but Plaintiff explained that she only spoke with them at work and did
       not know how she could work at MDM without talking with them and getting instructions.

43.    Soledad told Plaintiff that she had physically punished other women who spoke to her
       husband.

44.    Soledad pushed Plaintiff into metal shelves lining the wall and began hitting and punching
       Plaintiff on her body and slapping and scratching Plaintiff's face.

45.    Plaintiff feared that Soledad may use some item in the warehouse as a weapon.

46.    Plaintiff also feared that Julia would begin attacking her physically too as Julia was
       insulting Plaintiff throughout the incident.

47.    During the attack, Plaintiff cried and tried to cover her face with her hands to avoid being
       scratched in the eyes.

48. Julia watched the entire attack and continued to insult Plaintiff and told Plaintiff that she was nothing and she couldn't do anything about what was happening to her.

49. At around 7:00 p.m., Julia unlocked the door and she and Soledad exited the warehouse; Plaintiff exited behind them.

50. After leaving the workplace, Plaintiff contacted the New York City Police Department and reported the events; she also went to the hospital and was treated for her injuries.

51. As a direct consequence of these events, Plaintiff was diagnosed with, among other things, severe distress, anxiety, and depression.

52. The Queens County District Attorney brought against Soledad Minchala charges of assault in the third degree and harassment in the second degree. Soledad pled guilty to disorderly conduct and was sentenced to a conditional discharge.

53. Plaintiff was also granted a full Order of Protection for two (2) years.

54. During her employment by D3efendants, Plaintiff was not given any notice of pay rate.

55. Plaintiff was paid $100.00 per week in cash throughout the entire period of her employment, but was told that she would be paid $120.00 per six-day work week, or $20.00 per day.

56. While Plaintiff was part of the wait staff, she also cleaned the building outside, cleaned the dining area and restrooms, did food preparation, and bussed her own tables. Plaintiff also earned tips from the customers she served.

57. During all relevant times, Plaintiff ordinarily worked 59 hours per week: Plaintiff's hours were 8:50 am to 6:20 pm—nine and a half hours per day—Monday, Tuesday, Thursday and Friday; and 7:50 am to 6:20 pm—ten and a half hours per day—Saturday and Sunday.

58.    Of those shifts, on weekdays Plaintiff worked from 8:50 am to 11:00 am cleaning and working on food preparation and performed another half hour of cleaning at the end of the shift.  Her wait staff duties were from 11:00 am to around 5:50 pm.

59.    On weekends, Plaintiff worked from 7:50 am to approximately 10:00 am cleaning and working on food preparation and performed another half hour of cleaning at the end of the shift.  Her wait staff duties were from 10:00 am to around 5:50 pm.

60.    More than two hours and more than twenty percent (20%) of Plaintiff's shift each day was spent on cleaning, food preparation and other non-tipped work.

61.    The dinner wait staff began work at 6 pm and worked until MDM closed at 4 am. On information and belief, the dinner wait staff was paid $25.00 to $30.00 per shift.

62.    Plaintiff got one day off per week, usually on Wednesday.   However, Defendants sometimes changed Plaintiff's day off, and during one period she worked thirteen (13) days in a row without a day off.

63.    During Plaintiff's regular work days, she got only one food break at 11:00 am for food, which lasted ten to fifteen minutes.

64.    During one Saturday shift, Plaintiff worked from 8 am to midnight—sixteen hours—to fill in for an absent co-worker.

65.    Also, once during a football game involving the team from Ecuador, Plaintiff worked from 8:50 am to 7:30 pm.

66.    During that eleven hour shift, Plaintiff also got only one food break at 11:00 am.

67.    If the restaurant was busy, as was often the case on weekends, Plaintiff sometimes had no break at all to eat.

68.   In or about November 2015, defendants asked Plaintiff (and all other members of the wait staff) to sign a journal prior to getting paid.

69.   The journal included a picture of each worker's passport and beneath it each worker's weekly salary. Plaintiff's salary was listed at $120.00 for the week.

70.   Plaintiff asked why the journal said her salary was $120.00, when she only got paid $100.00. Defendants explained that the extra $20.00 was paid to the bartender.

71.   At the same time, Plaintiff also had to sign the journal for tips over $40.00.

72.   Plaintiff signed the journal for her weekly salary two times and for her tips over $40.00 two times.

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938 ("FLSA")**
**29 U.S.C. §§ 201, *et seq.***
**(Minimum Wage—Against All Defendants)**

73.   Plaintiff, on behalf of herself and of the Collective Plaintiffs, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

74.   At all relevant times, Defendants were employers engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants employed Plaintiff and the Collective Plaintiffs.

75.   At all relevant times, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiff and the Collective Plaintiffs the federally required minimum wage for each hour worked pursuant to 29 U.S.C. § 206.

76.   As a result of the wrongful conduct alleged herein, Plaintiff, on behalf of herself and of the Collective Plaintiffs, are entitled to an award of damages in an amount to be

determined at trial that includes their respective unpaid compensation, liquidated damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

**COUNT II**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938 ("FLSA")**
**29 U.S.C. §§ 201, *et seq.***
**(Overtime—Against All Defendants)**

77.   Plaintiff, on behalf of herself and of the Collective Plaintiffs, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

78.   At all relevant times, Plaintiff and Collective Plaintiffs regularly worked in excess of forty (40) hours per week.

79.   At all relevant times, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiff and the Collective Plaintiffs at the federally required overtime rate of one-and-a-half times their regular rate of pay for hours worked in excess of forty (40) per week pursuant to 29 U.S.C. § 207.

80.   As a result of the wrongful conduct alleged herein, Plaintiff, on behalf of herself and of the Collective Plaintiffs, is entitled to an award of damages in an amount to be determined at trial that includes their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT III

### VIOLATION OF THE NEW YORK LABOR LAW ("NYLL")
### NYLL §§ 650, *et seq.*; 12 NYCRR § 146-1.1 *et seq.*
### (Minimum Wage—Against All Defendants)

81.     Plaintiff, on behalf of herself and of the Class, hereby realleges and incorporates by

reference each and every allegation contained in the previous paragraphs of this

Complaint as though fully set forth herein.

82.     At all relevant times, Defendants knowingly, willfully, regularly and repeatedly failed to

pay Plaintiff and the Class members the required New York minimum wage for each hour

worked pursuant to NYLL §§ 652 and 663 and 12 NYCRR § 146-1.2.

83.     As a result of the wrongful conduct alleged herein, Plaintiff, on behalf of herself and of

the Class, is entitled to an award of damages in an amount to be determined at trial that

includes their respective unpaid compensation, liquidated damages, attorneys' fees and

costs, and such other relief as this Court deems just and proper.

## COUNT IV

### VIOLATION OF THE NEW YORK LABOR LAW ("NYLL")
### NYLL §§ 650, 12 NYCRR 146-1.1 *et seq.*
### (Overtime—Against All Defendants)

84.     Plaintiff, on behalf of herself and of the Class, hereby realleges and incorporates by

reference each and every allegation contained in the previous paragraphs of this

Complaint as though fully set forth herein.

85.     At all relevant times, Plaintiff and Class members regularly worked in excess of forty

(40) hours per week.

86.     At all relevant times, Defendants knowingly, willfully, regularly and repeatedly failed to

pay Plaintiff and the Class members at the required New York overtime rate of one-and-

a-half times their regular rate of pay for hours worked in excess of forty (40) per week pursuant to 12 NYCRR § 146-1.4.

87.   As a result of the wrongful conduct alleged herein, Plaintiff, on behalf of herself and of the Class, are entitled to an award of damages in an amount to be determined at trial that includes their respective unpaid compensation, liquidated damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT V

### VIOLATION OF THE NEW YORK LABOR LAW ("NYLL")
### NYLL §§ 650 *et seq.*, 12 NYCRR 146-1.1 *et seq.*
### (Spread of Hours—Against All Defendants)

88.   Plaintiff, on behalf of herself and of the Class, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

89.   At all relevant times, Plaintiff and Class members regularly had workdays that extended over a period of time in excess of ten (10) hours.

90.   At all relevant times, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiff and the Class members one hour's pay at the basic minimum hourly wage rate when their workdays extended over a period of more than ten hours pursuant to 12 NYCRR § 146-1.6.

91.   As a result of the wrongful conduct alleged herein, Plaintiff, on behalf of herself and of the Class, is entitled to an award of damages in an amount to be determined at trial that includes their respective unpaid compensation, liquidated damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT VI

### VIOLATION OF THE NEW YORK LABOR LAW ("NYLL")
### NYLL §§ 190 *et seq.*, 12 NYCRR 146-2.1 *et seq.*
### (Wage Notice Violation—Against All Defendants)

92.     Plaintiff, on behalf of herself and of the Class, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

93.     Defendants failed to provide Plaintiff and Class members with wage notices pursuant to NYLL § 195 and 12 NYCRR § 146-2.2.

94.     As a result of the wrongful conduct alleged herein, Plaintiff on behalf of herself and of the Class, is entitled to an award of damages in an amount to be determined at trial.

## COUNT VII

### ASSAULT/BATTERY/FALSE IMPRISONMENT/INTENTIONAL INFLICTION OF
### EMOTIONAL DISTRESS/NEGLIGENCE
### (Against All Defendants)

95.     Plaintiff, on behalf of herself only, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

96.     Soledad and Julia Minchala's assault, false imprisonment and Intentional Infliction of Emotional Distress and Soledad Minchala's battery against Plaintiff were committed within the scope of their employment.

97.     By their indifference and/or inaction in response to these transgressions against Plaintiff, Defendants condoned and/or authorized Soledad and Julia Minchala's conduct.

98.     Defendants are vicariously liable for these transgressions against Plaintiff pursuant to the doctrine of *respondeat superior*.

99.    Based on the foregoing, Plaintiff suffered damages including pain and suffering, mental anguish, psychological trauma, emotional distress, loss of income and the cost of medical care and treatment.

100.   By reason of the foregoing, Plaintiff is entitled to all legal and equitable remedies available including an award of damages to include punitive damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

## COUNT VIII

### ASSAULT
### (Against Julia Minchala and Soledad Minchala)

101.   Plaintiff, on behalf of herself only, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

102.   Defendants Julia Minchala and Soledad Minchala by their conduct placed Plaintiff in apprehension of harmful contact.

103.   Based on the foregoing, Plaintiff suffered damages including fear, anguish, apprehension, pain and suffering, mental anguish, psychological trauma, emotional distress, loss of income and the cost of medical care and treatment.

104.   By reason of the foregoing, Plaintiff is entitled to all legal and equitable remedies available including an award of damages to include punitive damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

## COUNT IX

### BATTERY
### (Against Soledad Minchala)

105.   Plaintiff, on behalf of herself only, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

106.   Soledad Minchala intentionally made wrongful and offensive and injurious bodily contact with Plaintiff without Plaintiff's consent.

107.   Based on the foregoing, Plaintiff suffered damages including fear, anguish, apprehension, pain and suffering, mental anguish, psychological trauma, emotional distress, loss of income and the cost of medical care and treatment.

108.   By reason of the foregoing, Plaintiff is entitled to all legal and equitable remedies available including an award of damages to include punitive damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

## COUNT X

### FALSE IMPRISONMENT
### (Against Defendants Julia Minchala and Soledad Minchala)

109.   Plaintiff, on behalf of herself only, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

110.   Defendants Julia Minchala and Soledad Minchala by their actions intentionally confined Plaintiff without any privilege to do so and Plaintiff was conscious of the confinement; and did not consent to the confinement.

111.    Based on the foregoing, Plaintiff suffered damages including fear, anguish, apprehension, pain and suffering, mental anguish, psychological trauma, emotional distress, loss of income and the cost of medical care and treatment.

112.    By reason of the foregoing, Plaintiff is entitled to all legal and equitable remedies available including an award of damages to include punitive damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

**COUNT XI**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Julia Minchala and Soledad Minchala)**

113.    Plaintiff, on behalf of herself only, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

114.    Defendants Julia Minchala and Soledad Minchala by their actions willfully, wrongfully and intentionally engaged in the extreme and outrageous conduct of deliberate, systematic and malicious harassment, intimidation, humiliation and abuse of Plaintiff with and intent to cause, or with disregard of a substantial probability of causing, severe emotional distress; a causal connection between the conduct and injury; and severe emotional distress.

115.    Based on the foregoing, Plaintiff suffered damages including fear, anguish, apprehension, pain and suffering, mental anguish, psychological trauma, emotional distress, loss of income and the cost of medical care and treatment.

116.    By reason of the foregoing, Plaintiff is entitled to all legal and equitable remedies available including an award of damages to include punitive damages, prejudgment

interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

## COUNT XII

### AIDING AND ABBETTING
### (Against Julia Minchala and Soledad Minchala)

117. Plaintiff, on behalf of herself only, hereby realleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

118. Soledad Minchala by her actions produced emotional and physical injuries to Plaintiff with respect to the alleged acts in assault, battery, false imprisonment and intentional infliction of emotional distress.

119. Julia Minchala by her actions produced emotional and physical injuries to Plaintiff with respect to the alleged acts in assault, false imprisonment and intentional infliction of emotional distress.

120. Julia Minchala and Soledad Minchala were each aware of the other's role in the overall tortious activity of the other and knowingly provided substantial assistance in each aforesaid violation.

121. Based on the foregoing, Plaintiff suffered damages including fear, anguish, apprehension, pain and suffering, mental anguish, psychological trauma, emotional distress, loss of income and the cost of medical care and treatment.

122. By reason of the foregoing, Plaintiff is entitled to all legal and equitable remedies available including an award of damages to include punitive damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

**WHEREFORE**, Plaintiff, on behalf of herself and the Collective Plaintiffs and Class members, prays for relief as follows:

A.      Designation of this action as a collective action on behalf of the Collective Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state law claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b).

B.      Designation of Plaintiffs as Representatives of the (FLSA) Collective Plaintiffs.

C.      Designation of this action as a class action pursuant to FRCP Rule 23.

D.      Designation of Plaintiffs as Representatives of the (Rule 23) Class.

E.      Designation of The Kaplan Law Office as class counsel.

F.      An award of damages, including liquidated damages, to be paid by Defendants.

G.      All penalties available under applicable laws.

H.      An award of litigation costs and expenses, including, but not limited to, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216 and NYLL § 663 and other applicable statutes or rules.

I.      Pre-judgment and post-judgment interest as provided by law.

J.      An award for emotional and physical injuries including punitive damages.

K.      An award of any additional and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable of right by jury.

Dated: New York, New York
    April 26, 2016

                    THE KAPLAN LAW OFFICE

                    _____

                    Susan Kaplan, Esq. (SK 1735)
                    Charles Caranicas, Esq. (CC 9244)
                    30 Wall St., 8th Floor
                    New York, New York 10005
                    Tel:  347.683.2505
                    *Attorneys for Plaintiff*

## CONSENT TO SUE PURSUANT TO THE FAIR LABOR STANDARDS ACT

I hereby consent to be a plaintiff in a wage and hour lawsuit under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, to secure any unpaid wages, overtime pay, liquidated damages, interest, attorneys' fees, costs, and other relief arising out of my employment with RB Maintenance LLC and any other associated parties.

I hereby authorize The Kaplan Law Office and any associated attorneys as well as any successors or assigns, to represent me in such action.

DATE: 4/22 , 2016          Signature: _____
                                              Blanca Raquel Bravo Velez


## CONSENTIMIENTO PARA DEMANDAR CONFORME A LA LEY "FAIR LABOR STANDARDS ACT" (CONDICIONES RAZONABLES DE TRABAJO)

Por la presente doy mi consentimiento para ser el demandante en una accion judicial conforme a la ley de condiciones razonables de trabajo ("Fair Labor Standards Act, § 201 *et seq.*) para garantizar el pago de salario minimo, salario por horas extras, danos y perjuicios establecidos, honorarios del abogado, gastos y calquier otra reparacion que proceda por mi empleo con RB Maintenance LLC y toda parte asociada.

Yo autorizo al The Kaplan Law Office, abogados asociados, y sus sucesores y representantes que me representen en tal accion.

DATE: 4/22 , 2016          Signature: _____
                                              Blanca Raquel Bravo Velez